UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DANIEL VARGAS, | Case No. 2:14-CV-1942 JCM (CWH) |
| Plaintiff(s), | AMENDED ORDER |
| v. | |
| AMBER HOWELL, et al., | |
| Defendant(s). | |

Presently before the court are three motions for partial dismissal by various defendants.

- Defendant Deborah Knotts filed a motion for partial dismissal. (Doc. # 18). Plaintiff Daniel Vargas filed a response, (doc. # 29), and defendant Knotts filed a reply, (doc. # 33).

- Defendants Shaun Briley, James Goodson, John Olson, Gary Patterson, and Russell Taylor (collectively "officer defendants") filed a motion for partial dismissal. (Doc. # 21). Plaintiff filed a response, (doc. # 31), and the officer defendants filed a reply, (doc. # 36).

- Defendants Richard Gloeckner, Amber Howell, and Steve McBride (collectively "state defendants") filed a motion for partial dismissal. (Doc. # 25). Plaintiff filed a response, (doc. # 34), and the state defendants filed a joint reply (doc. # 39).

Also before the court are plaintiff's countermotions for leave to amend.[1] (Docs. # 30, 32, 35). Defendants filed responses, (docs. # 37, 38, 40), and plaintiff filed a reply, (doc. # 46).

---

[1] Under District of Nevada Special Order 109(III)(F)(4), a separate document must be filed on the docket for each purpose. Plaintiff filed a response to each of defendants' motions to dismiss and included in those responses countermotions to amend. The clerk split the requests for relief as directed by Nevada Special Order 109.

**James C. Mahan**
**U.S. District Judge**

**I.      Background**

This is a civil rights and tort action for damages resulting from an alleged incident at Nevada Youth Training Center ("NYTC"). Plaintiff Daniel Vargas is a former inmate at the NYTC and Elko County Juvenile Detention Center ("Elko") in Elko, Nevada. (Doc. # 10, p. 3).

Plaintiff alleges that he was using the restroom while incarcerated at NYTC in November 2013, when defendant Patterson demanded that he exit the stall and called him inappropriate and derogatory names because plaintiff could not wait to use the restroom. (Doc. # 10, p. 8). Plaintiff left the bathroom stall and went to his cell. (*Id.*).

Plaintiff alleges that Patterson then came to plaintiff's cell, continued to call him names, and yelled at him to get out of his cell and go to "the hole" (solitary confinement). Plaintiff claims that Patterson threatened to put him in "the hole" for three days. (*Id.*). Plaintiff did not leave his cell as instructed.

Patterson called his supervisor, defendant Goodson, who came to plaintiff's cell with defendants Briley, Taylor, and Olson. (*Id.*). Goodson allegedly told plaintiff that he would be removed "either the good way or the bad way." (*Id.*). Plaintiff still did not leave his cell as instructed.

Plaintiff alleges that, upon declining to leave his cell, Patterson, Goodson, Taylor, Briley, Olson, and "Doe" officers slammed his head into the concrete wall and began to beat and choke him. (*Id.* at 9). Plaintiff reports feeling pain, seeing "stars," and having trouble breathing. (*Id.*).

One of the "Doe" officers allegedly continued to choke plaintiff until "blood gushed out of [plaintiff's] nose and his left eye." (*Id.*). Plaintiff alleges that the choking caused a subjuctival hemorrhage in his left eye. (*Id.*).

At some point during the alleged attack, one of the defendants handcuffed plaintiff. (*Id.*). Plaintiff alleges that defendants "hobbled" him—essentially hogtieing him by binding his knees together and shackling his hands to the rear of his knees—as punishment. (*Id.*). Plaintiff alleges that Patterson, Goodson, Taylor, Briley, Olson, and "Doe" officers punched, elbowed, and jabbed him in the ribs and kicked him in the head and his left eye while he was "hobbled". (*Id.*).

**James C. Mahan**
**U.S. District Judge**

- 2 -

1  Plaintiff alleges that defendants left him "hobbled" for two and a half hours and withheld
2  medical attention. (*Id*. at 10). Plaintiff alleges that he remained "hobbled" during his medical
3  examination with defendant Knotts, a corrections nurse. (*Id.*). Plaintiff claims that he did not
4  receive medical care during his examination or at any time subsequent to the attack. (*Id.*).

5  Approximately three hours after the alleged attack, NYTC transported plaintiff to Elko and
6  charged him with battery. (*Id.*). Plaintiff alleges that, by the time of his transport, his eyes were
7  bloody and his face had visible contusions. (*Id.*). Plaintiff alleges that he did not receive any
8  medical care or treatment at Elko. (*Id.*). Plaintiff was later transported back to NYTC. (*Id.*).

9  In December 2013, approximately one month after the attack, NYTC transferred plaintiff
10  to Red Rock Academy ("Red Rock"). (*Id.*). Upon arrival at Red Rock, the facility's staff examined
11  plaintiff for injuries and sent him to University Medical Center for treatment. (*Id.* at 11). Plaintiff
12  alleges that, due to his injuries and failure to receive medical care, he suffers from permanent
13  vision loss. (*Id.*).

14  On February 24, 2015, plaintiff filed an amended complaint against Amber Howell,
15  administrator of the Nevada division of child and family services; Steve McBride, deputy
16  administrator of NYTC; Richard Gloeckner, superintendent of NYTC; Robert Stokes, Elko's
17  manager; Elko County, Nevada; James Goodson, NYTC head supervisor; Russell Taylor, NYTC
18  assistant supervisor; NYTC supervisors Gary Patterson, Shaun Briley, and John Olson; Deborah
19  Knotts, NYTC corrections nurse; and numerous "Doe" and "Roe" defendants. (*Id.* at 3-7). Plaintiff
20  brought claims against all named defendants in their individual capacities. (*Id.* at 6).

21  Plaintiff alleges (1) violations of excessive force under 42 U.S.C. § 1983 against all
22  defendants except Stokes and Elko County; (2) denial of medical care under 42 U.S.C. § 1983
23  against all defendants except Elko County; (3) municipal liability under 42 U.S.C. § 1983 against
24  all defendants; and (4) various state causes of action. (Doc. # 10, p. 2).

25  On May 5, 2015, the court granted the parties' stipulation to dismiss plaintiff's excessive
26  force claim against defendant Knotts with prejudice. (Doc. # 42).

27  . . .
28  . . .

**James C. Mahan**
**U.S. District Judge**

- 3 -

## II. Legal standards

*A. Rule 15(a) - leave to amend*

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." The Supreme Court has interpreted Rule 15(a) and confirmed the liberal standard district courts must apply when granting such leave. In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court explained:

> In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.–the leave sought should, as the rules require, be 'freely given.'

*Id.* at 182.

The local rules of federal practice in the District of Nevada require that a party submit a proposed, amended pleading along with a motion to amend. D. Nev. R. 15-1(a).

*B. Rule 12(b)(6) - motion to dismiss*

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.*

Second, the court must consider whether the factual allegations in the complaint allege a

James C. Mahan
U.S. District Judge

- 4 -

plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal quotations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III.  Discussion

#### A. *Plaintiff's countermotions for leave to amend*

Plaintiff seeks leave to amend the first and second causes of action of his complaint under Federal Rule of Civil Procedure 15(a)(1)(B). Defendants respond that plaintiff fails to attach a copy of his proposed amended complaint pursuant to Local Rule 15-1(a). Defendants also argue that plaintiff possessed all of his NYTC medical records at the time he first amended his complaint, and therefore had the necessary facts to assert his claims. (Doc. # 12).

Plaintiff's "motions" for leave to amend are a mere four paragraphs. Plaintiff fails to propose any amendments or to specify how any amendment would cure the deficiencies in his complaint. Plaintiff merely states that any deficiencies can be cured by allowing him to file a second amended complaint.

Because plaintiff requests leave to amend only if the court is inclined to grant defendants' motions to dismiss, the court declines to grant plaintiff leave to file a second amended complaint.

Further, plaintiff has failed to file a proposed second amended complaint as required by Local Rule 15-1(a). Accordingly, the court denies plaintiff's countermotions for leave to amend.

### B. Defendants' motions for partial dismissal

#### 1. State defendants' motion to dismiss plaintiff's first cause of action for excessive force and second cause of action for denial of medical care

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).

For a defendant to be liable under § 1983, the plaintiff must demonstrate that the defendant personally participated in the alleged denial of rights. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989). There is no liability under § 1983 based on *respondeat superior* or other vicarious liability theories*. Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 663 n.7 (1978); *see also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). A supervisor may be liable for constitutional violations of subordinates, however, if the supervisor participated in, directed, or knew of the violations and failed to prevent them. *Id.*

In § 1983 claims, "supervisors can be held liable for: (1) their own culpable action or inaction in the training, supervision, or control of subordinates; (2) their acquiescence in the complained-of constitutional deprivation; and (3) conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

Plaintiff alleges that state defendants, in their individual capacities, maintained practices, policies, and customs that permitted the use of excessive force including (1) failure to provide adequate training and supervision; (2) failure to adequately discipline or restrain officers; (3) selection of officers with propensities for violence; (4) failure to provide adequate medical care; and (5) ratification of the specific unconstitutional acts alleged by conduct and policy. (Doc. # 10, p. 12).

**James C. Mahan**
**U.S. District Judge**

Plaintiff does not assert that the state defendants personally participated in any of the alleged constitutional deprivations related to either excessive use of force or the denial of medical care. The complaint likewise does not contain facts suggesting that the group supervisors directed or knew of the alleged violations of plaintiff's rights and failed to act to prevent them.

Accordingly, any effort to hold the state defendants liable in their individual capacities would necessarily be based on a theory of *respondeat superior*. Therefore, the individual claims against the state defendants fail. *See Monell*, 436 U.S. at 663 n.7. The court will dismiss plaintiff's individual capacity claims against the state defendants for plaintiff's first and second causes of action.

*2.   Motions to dismiss plaintiff's second cause of action for denial of medical care.*

Civil liability for Eighth and Fourteenth Amendment violations lies when a state actor is deliberately indifferent to a serious medical need. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976). "Claims by pretrial detainees are analyzed under the Fourteenth Amendment due process clause, rather than under the Eighth Amendment." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). "[E]ven though the pretrial detainees' rights arise under the due process clause, the guarantees of the Eighth Amendment provide a minimum standard of care for determining their rights." *OR Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003). Accordingly, the court will consider Fourteenth and Eighth Amendment standards as interchangeable, as they relate to plaintiff's claims, for the purposes of its analysis.

In general, the "deliberate indifference" inquiry requires a court to first determine whether the deprivation was sufficiently serious. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). "Seriousness" hinges on whether the prisoner was deprived of the minimal civilized measure of life's necessities by showing that the defendants knew of but disregarded a substantial risk to the plaintiff's safety. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Tochugi v. Chung,* 391 F.3d 1051, 1057 (9th Cir. 2004). Circumstantial evidence or "the very fact that the risk was obvious" may establish that a prison official subjectively knew of a substantial risk of harm to the plaintiff. *Farmer*, 511 U.S. at 842.

James C. Mahan
U.S. District Judge

1    This standard goes beyond gross negligence. *Wood v. Housewright,* 900 F.2d 1332, 1334
2    (9th Cir. 1990). Further, an "error in good faith" will not trigger § 1983 liability for Eighth
3    Amendment violations, "whether that conduct occurs in connection with establishing conditions
4    of confinement, supplying medical needs, or restoring official control over a tumultuous
5    cellblock." *Whitley v. Albers,* 475 U.S. 312, 319 (1986). Even where officials "actually knew of a
6    substantial risk of inmate health or safety [they] may be found free from liability if they responded
7    reasonably to the risk." *Farmer*, 511 U.S. at 844.

8    Along with a serious medical need, a plaintiff must show that the defendant acted with
9    deliberate indifference towards such medical need, and such indifference caused the plaintiff harm.
10   *Farmer*, 511 U.S. at 834; *Jett*, 439 F.3d at 1096. A plaintiff can establish indifference through the
11   way in which prison officials provide medical care, or by demonstrating that prison officials
12   denied, delayed or intentionally interfered with medical treatment. *Hutchinson v. United States*,
13   838 F.2d 390, 394 (9th Cir. 1988).

14   However, mere delay in medical treatment without more is insufficient to state a claim of
15   deliberate medical indifference. *Shapley v. NV Bd. of State Prison Comm'rs,* 766 F.2d 404, 408
16   (9th Cir. 1985). To state a claim of deliberate medical indifference, the delay must cause substantial
17   harm. *Wood v. Housewright,* 900 F.2d 1332, 1335 (9th Cir. 1990).

18   Here, plaintiff alleges a serious medical need. Plaintiff alleges that fifteen officers[2] beat
19   him while he was "hobbled." Plaintiff alleges suffering blows to his head and torso, and being
20   choked so hard that it later caused a subjuctival hemorrhage in his eye. (Doc. # 10, p. 9). Plaintiff
21   complains of "seeing stars," hearing ringing, and experiencing a serious headache from the blows.
22   Plaintiff also alleges that he had visible contusions, bruising, and cuts and that he was in pain.

23   Defendants' alleged conduct may have resulted in further significant injury or the
24   "unnecessary . . . infliction of pain." *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006); *Hudson
25   v. McMillian*, 503 U.S. 1, 10 (1992) (holding that blows that caused bruises, swelling, loosened
26   teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes); *Murphy*

---

[2] Plaintiff alleges that defendants Patterson, Goodson, Taylor, Briley, Olson, and Doe Officers I-X participated in the alleged altercation. (Doc. #10, p. 9).

James C. Mahan
U.S. District Judge

- 8 -

*v. Walker*, 51 F.3d 714, 719 (7th Cir. 1995) (prisoner suffering pain after head injury was entitled to go forward with a deliberate indifference claim against a guard). If the facts are as plaintiff alleges, plaintiff could have suffered nonobvious and non-superficial head injuries that worsened with time. At minimum, plaintiff's injuries required immediate attention to properly diagnose their severity.

Having decided that plaintiff suffered a serious injury, the court now considers whether defendant Knotts and the officer defendants treated plaintiff with deliberate indifference to his medical needs.

a.   Officer defendants

Despite plaintiff's serious injuries and the risk that further harm would result from the delay, the officer defendants allegedly left plaintiff shackled and delayed his medical care for two and a half hours. (Doc. # 10, p. 10). Having allegedly beaten plaintiff beforehand, the officers subjectively knew of plaintiff's physical distress and disregarded the risk of serious injury of leaving plaintiff untreated.

Further, to hold the offers liable for denial of medical care, the two and a half hour delay must have caused substantial harm to plaintiff. *Wood,* 900 F.2d at 1335. According to plaintiff, the officers' beating caused "permanent and irreversible vision loss." Plaintiff further alleges that he suffers from "permanent disability, mental, physical and emotional pain, and a loss of enjoyment of life." (Doc. # 10, p. 11).

Discovery may reveal that plaintiff's vision loss is unrelated to the officers' delayed treatment, or that no treatment could have alleviated plaintiff's symptoms immediately after the alleged altercation. However, at the motion to dismiss stage, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236. Accordingly, the court finds that plaintiff has alleged a §1983 claim for deliberate medical indifference against the officer defendants.

b.   Defendant Knotts

Plaintiff alleges that defendant Knotts examined him, but did not provide needed medical attention, two and a half hours after the incident. (Docs. # 9, 10). Plaintiff alleges that he remained

James C. Mahan
U.S. District Judge

- 9 -

shackled and hobbled throughout the medical examination. Plaintiff alleges that defendant Knotts did not provide him any medical treatment at all.

Defendant Knotts' response focuses on the severity of plaintiff's alleged injuries. Defendant Knotts asserts that it was reasonable for her to believe that plaintiff's injuries did not require medical attention. (Doc. # 18, p. 9). Because the court finds that plaintiff alleges serious injuries, defendant Knotts' arguments are unhelpful for the court's analysis.

Approximately one half hour after plaintiff's medical examination, plaintiff claims he was transferred to Elko, where he was booked for battery charges. Plaintiff's subsequent medical examination was a month later when he transferred to Red Rock Academy, suggesting that defendant Knotts did not follow up with plaintiff after his initial examination.

Plaintiff does not allege that defendant Knotts subjectively knew of the beating from which he sustained injury. However, plaintiff's facial bruising and bleeding eye damage were plainly severe enough to merit a thorough medical examination.

The court finds that defendant Knotts may have been deliberately indifferent in the way in which she provided medical care to plaintiff. *Hutchinson*, 838 F.2d at 394. A reasonable doctor or nurse would have likely found plaintiff's head injury "important and worthy of comment or treatment." *Mahler v. Gatten*, 40 F. App'x 415, 416 (9th Cir. 2002). As a trained correctional nurse, defendant Knotts did not reasonably respond to the risk of substantial harm to plaintiff's health. Accordingly, the court finds that plaintiff has alleged a §1983 claim for deliberate medical indifference against the defendant Knotts.

    *3.    Qualified immunity*

Defendant Knotts and officer defendants argue that they are entitled to qualified immunity against plaintiff's denial of medical care claim because their actions were neither unreasonable nor unlawful.

Qualified immunity is an affirmative defense that protects government officials from suits that seek civil damages. *See Pearson v. Callahan*, 555 U.S. 223, 224 (2009). It provides "an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

**James C. Mahan**
**U.S. District Judge**

- 10 -

1    Resolving the issue of **qualified immunity** is a two-step inquiry; a court must (1) identify
2    the constitutional right, (2) and determine whether the right was clearly established. *Butler v. Elle*,
3    281 F.3d 1014, 1020 (9th Cir. 2002).
4    The court asks if, "[t]aken in the light most favorable to the party asserting the injury . . .
5    the facts alleged show the officer's conduct violated a constitutional right." *Id*. at 201. If plaintiff's
6    constitutional rights are not violated, **qualified immunity** protects the defendants from suit. *Id.* At
7    the motion to dismiss stage, the court assumes that there has been a constitutional violation for the
8    purposes of the analysis.
9    A right is clearly established if the law puts the officials on notice that their conduct would
10   be clearly unlawful. *Id.* at 202. "The court need not look to a case with identical or even 'materially
11   similar' facts." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (quoting *Hope v. Pelzer*,
12   536 U.S. 730, 739-41 (2002)). The court needs to decide only whether a reasonable official would
13   have understood from the existing law that his conduct violated that the right. *See Blueford v.*
14   *Prunty*, 108 F.3d 251, 255 (9th Cir. 1997).
15   *In general, prison officials have a duty to provide prisoners medical care when they are*
16   *aware of an excessive risk to an inmate's health and safety. Gibson v. Cty. of Washoe*, NV, 290
17   F.3d 1175, 1187 (9th Cir. 2002). The law regarding the medical treatment of prisoners was clearly
18   established at the time of defendants' alleged conduct. *See Clement v. Gomez, 298 F. 3d 898, 906*
19   *(9th Cir. 2002).* It was also clearly established that defendants could not intentionally deny or delay
20   access to medical care. *Id.* (citing *Estelle,* 429 U.S. at 104-05).
21   Therefore, the defendants are entitled to qualified immunity only if the court finds that a
22   reasonable official would not have believed the at-issue conduct violated plaintiff's constitutional
23   right. *See Saucier*, 533 U.S. at 205.
24   a.    Officer defendants
25   In their motion for partial dismissal, the officer defendants argue that their belief that
26   plaintiff's injuries did not require immediate medical attention was reasonable. (Doc. #21, p. 8).
27   This court cannot agree, as a matter of law, that such belief was reasonable.
28

**James C. Mahan**
**U.S. District Judge**

- 11 -

Taking the plaintiff's allegations as true, the officers beat plaintiff and witnessed plaintiff endure several punches and kicks to the head, torso, and eye. The officers offer no reason or explanation for the two and a half hour wait for plaintiff's medical examination. The officers also cite no case law that excuses them from providing medical care merely because they believed that "the nurse who examined him would make the appropriate determination regarding plaintiff's medical needs."

The law clearly prohibits the officers from intentionally denying or delaying plaintiff's access to medical care. *See Clement*, 298 F. 3d at 906. Accordingly, the officers' actions are not protected by qualified immunity **at this time.**

b.  Defendant Knotts

Defendant Knotts argues that plaintiff insufficiently pleads facts that establish that she had personal knowledge of plaintiff's serious medical condition. According to defendant Knotts, it was reasonable for her to assume that plaintiff's injuries did not require medical attention. (Doc. # 18, p. 11).

Plaintiff alleges that he had sustained serious physical injuries at the time of the medical examination. Plaintiff's facial bruising, cuts, and bleeding eye should have put defendant Knotts on notice of the potential for other serious head injuries.

As the court has previously discussed, a reasonable medical professional would have understood that a cursory examination of plaintiff's alleged injuries was unconstitutional. *See Blueford*, 108 F.3d at 255. Accordingly, defendant Knotts' actions are not protected by qualified immunity at this time.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's motions to amend his complaint, (docs. # 30, 32, 35), be, and the same hereby are, DENIED.

IT IS FURTHER ORDERED that defendants' motions to dismiss, (docs. # 18, 21, 25), be, and the same hereby are, **GRANTED in part, and DENIED in part consistent with the**

**James C. Mahan**
**U.S. District Judge**

- 12 -

1  **foregoing. Plaintiff's individual capacity claims against the Richard Gloeckner, Amber**
2  **Howell, and Steve McBride for plaintiff's first and second causes of actions are dismissed**.
3      DATED July 23, 2015.

                                                _____
                                                UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 13 -