UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DANIEL VARGAS, | Case No. 2:14-CV-1942 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| AMBER HOWELL, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Daniel Vargas's motion for attorney's fees. (ECF No. 92). Defendants Shaun Briley, Richard Gloeckner, James Goodson, Amber Howell, Deborah Knotts, Steve McBride, John Olson, and Russel Taylor filed a response (ECF No. 99), to which plaintiff replied (ECF No. 102).

**I.      Facts**

Plaintiff is a civil rights litigant who challenged defendants' treatment of him at the Nevada Youth Training Center ("NYTC," a center for juvenile delinquents). (ECF No. 10). The parties are well aware of the allegations in the underlying complaint, which the court detailed in its order on defendants' motions for summary judgment. (ECF No. 49).

Plaintiff was initially represented by Al Lasso of Lasso Injury Law and Paola Armeni, who was then working for Gordon Silver.[1] (ECF No. 92). On November 13, 2015, Christiansen Law Offices ("CLO") associated as counsel for plaintiff. *Id.*

Plaintiff sought damages between $1,136,453.62 and $1,541,833.62, exclusive of emotional distress, future medical expenses, disability services, and pain and suffering from the

---

[1] Armeni is now a partner at Gentile Cristalli Miller Armeni Savarese. (ECF No. 92 at 3).

James C. Mahan
U.S. District Judge

date of the incident. (ECF No. 100 at 160). Plaintiff's damages calculation included alleged past medical expenses of $119,651.62. *Id.*

The parties settled the case on March 9, 2017, for $99,999. (ECF No. 101 at 184). The settlement included a clause stating that plaintiff was the prevailing party and his attorney could move for attorney's fees pursuant to 42 U.S.C. § 1988. *Id.* The settlement did not contain an admission of fault by defendants or request injunctive relief. *Id* at 183–190.

## II.      Legal Standard

Federal Rule of Civil Procedure 54(d)(2) allows a party to file a motion for attorney's fees if it: (1) is filed within 14 days after judgment is entered; (2) identifies the legal basis for the award; and (3) indicates the amount requested or an estimate thereof.

Title 42 U.S.C. § 1988(b) authorizes a court to exercise its discretion whether to allow a prevailing party in a 42 U.S.C. § 1983 case "reasonable attorney's fee as part of the costs."

Reasonable attorney's fees are based on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Id.* "The district court . . . should exclude from this initial fee calculation hours that were 'not reasonably expended.'" *Id.* at 433–34. Thus, the "court has discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Edwards v. Nat'l Bus. Factors, Inc.*, 897 F. Supp. 458, 460–61 (D. Nev. 1995).

After calculating the lodestar amount, the court can further adjust the lodestar calculation by considering the following factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also Stetson v. Grissom*, 821 F.3d 1157, 1166–67 (9th Cir. 2016). A court's explanation of an attorney's fees award "need not be elaborate,

1    but it must be comprehensible." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir.

2    2008). "As *Hensley* described it, the explanation must be concise but *clear*." *Id.* (quotation marks

3    omitted).

4    **III.     Discussion**

5        *a.   Request for attorney's fees*

6            Plaintiff's motion seeks $254,361.58 in attorney's fees. (ECF No. 92 at 9). The fee

7    breakdown attributes $197,675.00 to CLO, $32,120.00 to Lasso Injury Law, and $24,566.58 to

8    Gentile Cristalli Miller Armeni Savarese ("GCMAS").[2]

9            Defendants argue that plaintiff's problems with his case were knowable *ex ante*, and

10   plaintiff's attorneys pursued unwise litigation strategies in attempts to artificially inflate the

11   importance of the case.[3] Defendant asserts that the majority of plaintiff's hours spent on this case

12   were unreasonable, and plaintiff's request should be cut by 90%. (ECF No. 99 at 21).

13           The Ninth Circuit has described a reasonable number of hours in the context of civil rights

14   litigation as "[t]he number of hours . . . [that] could reasonably have been billed to a private client."

15   *Moreno*, 534 F.3d at 1111. "Lawyers might reasonably spend $148,000 worth of time to win

16   $234,000. But no reasonable person would pay lawyers $148,000 to win $34,000." *McGinnis v.*

17   *Kentucky Fried Chicken of Cal.*, 51 F.3d 805, 810 (9th Cir. 1994).

18           When using the lodestar method, "court[s] [are] not required to set forth an hour-by-hour

19   analysis of the fee request." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992). Courts

20   can "make across-the-board percentage cuts either in the number of hours claims or in the final

21

22           [2] Plaintiff's reply seeks an additional $3,510 to cover the cost of the reply. (ECF No. 102 at 12).

23           [3] The complaint contains allegations that plaintiff was sexually assaulted. (ECF No. 10).
24   However, plaintiff stated in deposition testimony that he was never touched by a staff member. (ECF No. 100).

25

26           The complaint also alleges that plaintiff was refused entry into military service and has been unable to find gainful employment. (ECF No. 10). Plaintiff stated in his deposition that he
27   visited with a Marines recruiter, but that he never wanted to enter into the military. (ECF No. 100 at 9). The recruiter never told plaintiff he was ineligible for service. *Id.* Further, plaintiff was
28   gainfully employed at multiple jobs after the incident at NYTC, and chose to leave the positions without notice. *Id.* at 87, 107.

**James C. Mahan**
**U.S. District Judge**

lodestar figure as a practical means of [excluding unreasonable hours] from a fee application." *Id.* When performing such reductions, the court should explain its reasoning. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013).

        *i.*      *The propriety of the request as related to Christiansen Law Offices*

Here, plaintiff requests $197,675.00 in attorney's fees based on the work performed by attorneys at Christiansen Law Offices. Attorney Terry, the senior lawyer, billed 334.8 hours at $550 an hour. Attorney Barrett, a junior associate, billed 21.80 hours at $450 an hour. Attorney Perdue, a first-year associate at the time, billed 10.50 hours at $350 an hour. Virginia Cano, a law clerk, billed 0.5 hours at $100 an hour.

Plaintiff argues that counsel "exercised judgment in structuring the work on this matter to maximize efficiencies, and the hours listed in the fee request are neither duplicative, unnecessary, or excessive." (ECF No. 92 at 10). Plaintiff's primary counsel chose to have its senior attorney, who bills $550 an hour to private clients, spend 335 hours on this case and only delegate 32 hours to junior associates. (ECF No. 92 at 9). The senior attorney spent an inordinate amount of time conducting tasks that could have been delegated to an attorney with less experience (and a lower billing rate) or to a paralegal.[4] (*See* ECF No. 92 at 26–35). These tasks include discovery review, creating a timeline of events, preparing stipulations and notices, and conducting extensive legal research, amongst others. *See id.* Plaintiff's motion, affidavit, and billing entries do not demonstrate appropriate judgment in structuring workload to maximize efficiencies.

Further, plaintiff's itemization of work contains numerous redundancies and demonstrates that counsel spent an unreasonable amount of time getting up to speed on the case, conducting discovery review, and drafting motions. *Id.* Additionally, defendants note a filing on August 19, 2016, related to a motion for reconsideration might be in error, as plaintiff never filed a motion for reconsideration in this case.[5] *Id.* at 31.

---

[4] As an example, Cano, a law clerk, drafted three deposition notices in half an hour. (ECF No. 92 at 29). Terry drafted multiple deposition notices, which sometimes took over half an hour each. (ECF No. 92 at 28) (2.10 hours to draft four notices). Cano bills at $100 an hour. Terry bills at $550 an hour.

[5] The only court orders filed within the 120 days preceding this time entry grant stipulations for extension of time, and could not possibly have been the subject of a motion for reconsideration.

1    Plaintiff argues that the court should consider the importance of adequately compensating

2  attorneys who pursue civil rights litigation on behalf of clients who would otherwise not be able

3  to afford adequate legal representation.  (ECF No. 92).  The Ninth Circuit has noted that courts

4  must "strike a balance between granting sufficient fees to attract qualified counsel to civil rights

5  cases, and avoiding a windfall to counsel." *Moreno*, 534 F.3d at 1111.  Here, spending 535 hours

6  of time to win a purely monetary judgment of $99,999 would constitute a windfall to plaintiff's

7  counsel.  Reducing the amount of compensable hours in this case does not deter qualified counsel

8  from pursuing civil rights litigation.  Rather, it encourages qualified attorneys to pursue civil rights

9  litigation in the same efficient manner that they pursue private litigation.  *See Moreno*, 543 F.3d

10  at 1111.

11    The court holds that the vast majority of hours expended in this case were unreasonable.

12  The court will exclude unreasonable hours from its lodestar calculation.  *Hensley*, 461 U.S. at 433–

13  34.

14    *A. Attorney Terry*

15    The court finds an appropriate across-the-board percentage cut in the number of hours

16  claimed by attorney Terry of 90% is appropriate here.   *See Gates*, 987 F.2d at 1399.  Attorney

17  Terry's billing entries demonstrate that he billed an unreasonable amount time on a case that settled

18  for a small fraction of plaintiff's requested damages award.  Attorney Terry's hours will be reduced

19  to 33.48.

20    Plaintiff's motion argues that Terry is an experienced civil rights litigator, and he had to

21  meticulously review the case file because this was a fact-intensive case and a "down to the minute"

22  timeline was critical to understanding plaintiff's claim.  (ECF No. 102 at 3).  Delegating 334 hours

23  for a senior litigator to perform these tasks demonstrates an inefficient use of resources.

24    Plaintiff's damages calculations provided in his fourth supplemental disclosures estimated

25  his case was worth between $1,136,453.62 and $1,541,833.62, exclusive of emotional distress,

26  future medical expenses, disability services, and pain and suffering.  (ECF No. 100 at 160).  The

27  case ultimately settled for $99,999, less than 10% of the lower bound any of plaintiff's estimated

28  damages.  Plaintiff did not obtain injunctive relief or any other public benefit.  It was unreasonable

**James C. Mahan**
**U.S. District Judge**

1   for attorney Terry to incur over $184,000 in attorney's fees himself before realizing the value of

2   his client's case was $99,999.  *See McGinnis*, 51 F.3d at 810.

3          Plaintiff argues that a reasonable rate for Terry is $550 an hour based on what he bills out

4   to private clients.  (ECF No. 92 at 9).  Defendants argue that a reasonable attorney's rate for Terry

5   is $350 an hour based on the prevailing market rates for a senior associate.  (ECF No. 99 at 23);

6   (ECF No. 101 at 206–07) (declaration of Kirk Lenhard).  The court notes that Terry is not a senior

7   associate, as defendants suggest, and will award attorney's fees at a rate of $450 an hour, which is

8   the upper bound suggested in the declaration of Kirk Lenhard and the District of Nevada cases he

9   cites in support.  (ECF No. 101 at 206–07).  This reflects Terry's significant experience in litigating

10  civil rights issues.

11         Terry reasonably billed 33.48 hours at $450 per hour, which results in a total fee award of

12  $15,066.

13                    *B.  Attorney Barrett*

14         Attorney Barrett spent 12 hours preparing a motion for reconsideration and amending the

15  complaint, which included research and review of a deposition.  (ECF No. 92 at 31).  As the court

16  noted earlier, this time entry may be in error.  Further, to the extent it was not in error, it is

17  duplicitous and unreasonable.  The court will exclude these hours from its lodestar calculation.

18  Barrett also spent 9.30 hours drafting and filing plaintiff's motion for attorney's fees.  (ECF No.

19  92 at 35).  The court holds that these hours are reasonable and will include them in its lodestar

20  calculation.

21         Plaintiff argues that a reasonable rate for Barrett is $450 an hour based on her 10 years of

22  experience working under attorney Christiansen.  (ECF No. 102).  Defendant notes that Barrett

23  was barred in 2015, and her billing rate should be that of a junior associate, or $250.  (ECF No.

24  99); (ECF No. 102 at 206).  The court will award fees at a rate of $300 per hour, which reflects

25  that although Barrett was recently admitted to the bar she does have litigation experience that

26  justifies a higher billing rate.

27         Barrett reasonably billed 9.30 hours at $300 per hour, which results in a total fee award of

28  $2,790.

**James C. Mahan**
**U.S. District Judge**

## C. Attorney Perdue

Attorney Perdue billed 10.50 hours to prepare a mediation brief. (ECF No. 92 at 31). The court holds that these hours are reasonable and will include them in its lodestar calculation. The court will award fees for attorney Perdue at the prevailing market rate for a first-year associate in Las Vegas, Nevada of $250 an hour. *See* (ECF No. 101 at 206–07). Accordingly, the total fee award attributable to Perdue is $2,625.

## D. The reply brief and paralegal fees

Plaintiff's reply brief requests an additional $3,510 for the time spent creating the reply brief. Notably, only one sentence in the entire brief contains a case citation. The rest of the brief is devoted to counsel's views of the case and of defendant's response. Plaintiff does not detail who prepared the reply brief, what his or her billing rate was, and how many hours he or she spent preparing the brief. The court holds that four hours was a reasonable amount of time spent reviewing defendant's responsive brief and drafting the reply brief, and a reasonable rate would be $250 an hour for the final work product. Therefore, the court will award $1,000 for the drafting of the reply brief.

The court holds that the law clerk fees incurred in this case, $50 for 0.5 hours of work, were reasonable.

### i. The propriety of the request as related to Lasso Injury Law

Attorney Lasso was plaintiff's original counsel. (ECF No. 92 at 38). His entries demonstrate that his billing in this case was excessive. *Id.* at 40. As defendants note, attorney Lasso spent time with undisclosed witnesses, revised and dismissed a complaint he had already filed, and attended depositions and mediations that he did not participate in. (ECF No. 99). Lasso's affidavit does not explain why his time spent performing apparently repetitive tasks was reasonable in this case. (ECF No. 92 at 38). However, contrary to defendants' assertions, not all of Lasso's meeting with other attorneys should be declared unreasonable. He did have to pass on his understanding of the case in order for CLO to adequately represent plaintiff.

The court will reduce attorney Lasso's reasonable hours expended on this case to 18.4 hours, which reflects the reasonable time that he spent interviewing the client, drafting the original

James C. Mahan
U.S. District Judge

- 7 -

complaint, and consulting with co-counsel, and excludes excessive and duplicitous time entries. The court holds an appropriate rate for Lasso's time is $250 an hour, as neither the motion nor his affidavit explain his experience or qualifications. Therefore, the total fee attributable to Lasso is $4,600.

*ii.      Whether GCMAS has standing to seek fees in this case*

Plaintiff seeks to recover attorney's fees related to Armeni's representation of plaintiff while Armeni was employed by Gordon Silver. (ECF No. 92 at 43).

Defendant cites *Geron v. Robinson & Cole, LLP*, 476 B.R. 732, 739 (S.D.N.Y. 2012), for the proposition that contingency fee agreements are firm assets, even after the firm has dissolved.[6] An exception to this rule occurs when the departing partner successfully settles a case through her efforts. *Id.* at 740–41.

Importantly, *Geron* interprets New York state law regarding partnership agreements. *See id.* However, plaintiff does not cite a single case in its motion or its reply to support its position that GCMAS has standing to request attorney's fees in this case. Plaintiff's reply does not even attempt to distinguish defendants' citations from the case at bar.

Armeni withdrew from the matter in 2015. The 2017 settlement was not due to the efforts of her or her associates. The motion and reply do not adequately demonstrate that GCMAS has standing to seek fees based on a contingency fee arrangement negotiated between plaintiff and Gordon Silver, Armeni's former firm. The court will deny this portion of plaintiff's motion without prejudice.

*iii.     The Kerr Factors*

Plaintiff's motion does not adequately address many of the *Kerr* factors. For example, when discussing awards in similar cases, the motion references cases that went to a jury and "one of the largest settlements against Clark County DFS for a single injury case." (ECF No. 92 at 15). This case is not similar to either of those, and any award obtained in those cases has no bearing on the appropriate award in this case.

---

[6] Defendants also cite *Beckman v. Farmer*, 579 A.2d 618, 636 (D.C. 1990). (ECF No. 99 at 17). *Beckman's* holding that partnership assets remain assets of the partnership after it dissolves through distribution interprets D.C. law. 579 A.2d at 636.

1          Further, the results obtained do not justify the requested award.  Plaintiff obtained a

2    settlement in the amount of $99,999 in exchange for a release of all claims.  This did not include

3    an admission of guilt or any form of injunctive relief.  These results do not justify the award of

4    fees and costs of nearly $300,000 that plaintiff requests.  *See McGinnis*, 51 F.3d at 810.

5          Furthermore, plaintiff's motion does not adequately demonstrate that this case presented

6    novel or difficult questions.  (ECF No. 92).  As the motion notes, there is well-settled law on use

7    of excessive force claims.  *Id.*

8          Finally, the other *Kerr* factors suggest that a reduction to fees is appropriate.  As the court

9    has already reduced plaintiff's fees in its lodestar calculation to reflect the reasonable number of

10   hours expended on this litigation, the court will not further reduce the award based on the *Kerr*

11   factors.

12        *iv.     Summary*

13        The court holds that the majority of time billed by Christiansen Law Offices litigating this

14   case was unreasonable.  The court will award attorney's fees in the amount of $21,531 based on

15   CLO's representation of plaintiff.  Similarly, the majority of time billed by Lasso Injury Law was

16   unreasonable.  The court will award attorney's fees in the amount of $4,600 based on Lasso's

17   representation of plaintiff.  As the motion does not demonstrate that GCMAS lacks standing to

18   request attorney's fees, the court will not award GCMAS attorney's fees at this time.  Therefore,

19   the total award of attorney's fees in this case is $26,131.

20        *b.   Request for expert witness fees*

21        Plaintiff requests reimbursement of $22,420 for expert witness fees and expenses.  (ECF

22   No. 92 at 3).  Defendants argue that plaintiffs cannot shift the cost of non-testifying expert witness

23   fees in this case.  (ECF No. 99 at 25).

24        42 U.S.C. § 1988 conveys no authority to shift non-testifying expert fees in § 1983 civil

25   rights cases to the losing party.  *W. Va. Univ. Hosp. Inc. v. Casey*, 499 U.S. 83, 102 (1991).

26   Congress has since amended § 1988, but the amendments do not affect the holding in *Casey* that

27   expert costs are not recoverable under § 1988 for claims brought pursuant to 42 U.S.C. § 1983.

28

1  *See Padro v. Commonwealth of P.R.*, 100 F. Supp. 2d 99, 109 (D.P.R. 2000); *Quesnoy v. Oregon*,

2  no. 3:10-cv-01538-ST, 2012 WL 115832, at *9–10 (D. Or. Apr. 6, 2012) (collecting cases).

3     Prevailing parties are limited to recover witness fees provided in 28 U.S.C. §§ 1821 and

4  1920.  These statutes allow recovery for costs of testifying experts and court-appointed experts,

5  but not for experts who serve in a non-testimonial capacity.  28 U.S.C. §§ 1821 and 1920; *see*

6  *Gates v. Deukmejian*, 987 F.2d 1392, 1408 (9th Cir. 1992).

7     Here, plaintiff's expert witnesses did not testify.  Accordingly, their fees are not

8  reimbursable under the relevant federal statutes.  *See Casey*, 499 U.S. at 102.  The court will deny

9  plaintiff's request to be reimbursed for expert witness fees.

10     *c.  Request for costs*

11     Plaintiff's motion seeks $17,234.39 in costs, exclusive of its request for expert witness

12  fees.  (ECF No. 92).  Defendants argue that the court should apply a 90% reduction to plaintiff's

13  costs.  (ECF No. 99).

14     The majority of plaintiff's costs were for mediation and deposition expenses.  (ECF No. 92

15  at 23–25).  All depositions were conducted prior to or during September of 2016.  Plaintiff's reply

16  notes that defendants were not amenable to settlement discussions until the mediation that occurred

17  on September 15, 2016.  (ECF No. 102 at 5 n.3).  Further, defendants' motion does not explain,

18  and the court cannot discern, a manner in which to determine whether any of these deposition costs

19  were incurred unreasonably.

20     As plaintiff's costs helped the parties to resolve the case via settlement, the court holds that

21  these costs were reasonable.  However, as the court mentioned previously, plaintiff's motion and

22  related briefing does not demonstrate that GCMAS has standing to request fees or costs in this

23  case.  Accordingly, the court will exclude $1,380.21 from the request for costs.  Therefore, costs

24  will be awarded in the amount of $15,854.18.

25  . . .

26  . . .

27  . . .

28  . . .

**James C. Mahan**
**U.S. District Judge**

## IV. Conclusion

The court will award attorney's fees in this case of $26,131.00 and costs of $15,854.18.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for attorney's fees (ECF No. 92) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that if plaintiff wishes to file an amended motion discussing whether GCMAS has standing to seek attorney's fees in this case, he must do so within fourteen (14) days of the date of this order. The motion must be limited to discussion of whether GCMAS has standing to seek attorney's fees and, if so, what a reasonable award of attorney's fees would be in the case.

IT IS FURTHER ORDERED that, in the event plaintiff does not file an amended motion, plaintiff shall submit a proposed judgment to the court within thirty (30) days of the date of this order for signature.

DATED February 27, 2018.

_____
UNITED STATES DISTRICT JUDGE